case presents two issues. We request that Mr. Soto's convictions be reversed. Both issues pertain to jury instructions and the lack thereof concerning fundamental constitutional rights. The first issue raised is whether the district court erred or erred in failing and refusing to give a no-adverse inference instruction once requested by Mr. Soto's attorney. The second error alleged is that the district court misinformed the jury of the government's burden of proof by advising them in its parting instructions that the jury had a duty, an obligation. Its job was to seek the truth and determine guilt or innocence. The no-adverse inference instruction, as I mentioned, was rejected by the district court. There's no question that Mr. Soto's attorney asked for it. In 1981, the Supreme Court in Carter v. Kentucky held that it was constitutional error to deny this instruction once it was requested by the defendant. In addition, in that case, the Court held that the presumption of innocence instruction and the burden of proof instruction were not sufficient to convey this additional instruction to the jury. In 19 or, yes, in 1996, the Supreme Court this Court addressed the Carter instruction in Castaneda, if I'm pronouncing that correctly. And in Castaneda, this Court held that a similar, an instruction that is similar to the one presented in Mr. Soto's case did meet the requirements of Carter. However, I would suggest to this Court that Castaneda can and should be distinguished. The distinction is small, but in Castaneda, the jury instruction that was upheld told the jurors that the defendant does not have to testify. In Mr. Soto's case, the jury was told that Mr. Soto does not have the burden or the duty to testify. Now, this distinction is slight. I give you that. However, the jury instruction upheld in Castaneda that the defendant does not have to testify implies that he has a right and that the right can be exercised without adverse inference, without a cost to him. Whereas in this case, the jury is not really told that he has a right not to testify. Instead, they're told in the negative that he does not have the dirt, the duty, or the burden to take the stand and testify. Now, the reason that this Court should distinguish Castaneda is because no other court has followed this Court under similar circumstances. And I outlined in my brief, I think, five or six other circuits that have addressed this. And in each of those cases … Well, actually, in your briefing, you were much … you took a slightly different approach than you're taking today. That is, in your briefing, you said, it's just wrong, and setting the stage, presumably, for an inbank. That's correct, Your Honor. Hitch later on. But you're now saying, well, it's distinguishable, and it's a really tiny distinction, but try hard because it's wrong. So what's the … I have difficulty seeing how they're different. I'll just put that out on the table. I just have difficulty seeing that they're distinguishable in a principled way. Your Honor, and I understand that. And I spent some time sitting down and comparing the Carter instructions with the Castaneda instructions, with Mr. Soto's instructions, and this is the difference that's out there. I think that somebody smarter than I am could probably come up with a great theory on why this is really, truly distinguishable. And I would suggest to the Court that if the Court wants to distinguish it, I think it can. And I think the Court should be motivated to distinguish it because Castaneda was truly wrongly decided. There was also a statement from the Court in this case that your client was not required to take the stand, which is a little different than saying that there's a burden. He just doesn't have to do it. It was pretty colloquial, but he says the defendant isn't required to take the stand himself if he calls no witnesses or doesn't testify or to draw no adverse presumption from that fact. He may not get on the stand for all kinds of reasons. And then he says, you know, some of which are this and this and this. So it seems to me that the essence of what you want was before the jury. Well, and that instruction, it's my understanding, was given during voir dire, and it wasn't a written instruction. It was basically an admonishment to a particular jury panel member as the Court was voir dire-ing the jury. What's the significance, if I can ask this, of the procedural point? As I recall, the judge in the voir dire said there could be no adverse presumption from him not testifying. So the judge at least informally gave the jury advice in the voir dire that it's along the lines of Carter, if not totally compliant with Carter. But the problem is it's in this informal voir dire of the jury rather than formal instruction before the jury deliberates. So is there any precedent as to the significance of that difference? I don't think right on point, Your Honor. I would suggest that given that it was before the presentation of evidence and that it was given orally to the jury, they had not seen the evidence at that point. And in this case, the evidence is crucial. It comes down to the only two people in the world that knew what happened was the confidential informant and Mr. Soto, and Mr. Soto didn't testify. Well, isn't it even better to give it beforehand so the jury isn't waiting and wondering the whole trial why the defendant might not get up and testify? I think that most courts do during voir dire indicate, you know, the defendant may or may not testify in that. But I think that in Carter, the court said, when you ask for instruction or written instruction, it needs to be given. And that was not done in this case. So I don't – this would not meet the Carter rule, especially considering it was a fundamental right and then it was reaffirmed in James. Now, in James, it's a little bit closer to Judge Gould's question because in James they held substance over form, and the issue there was an oral admonishment versus a written instruction. But they said, you know, the defense attorney's request for an admonishment was sufficient to preserve the Carter objection. And you can't put form over substance on an issue so fundamental as this one. So while James is not right on point, it certainly gives this Court some guidance on that issue. Just speaking as – just for myself, I have the same problem that Judge Graber has with can we really – can we fairly distinguish Castaneda? And so I might have to say on that, that you're really remitted to seeking rehearing in vain. On that, I can see why you would not want to advocate that as a starting position. But it seems kind of hard to distinguish it in a meaningful way. It's not the greatest decision, and I'm not a big fan of that decision both because it would be better, I think, if those instructions were routinely given when asked, when requested, and because it's ambiguous in Castaneda. Is it saying there's no violation or harmless error? But anyway, that's kind of where I'm coming from on that issue.  I understand getting up here and asking. You have a tough argument to make on that. But I think that the other circuits really helped me in this case in that they show that the Ninth Circuit's really out on an island on this one. Nobody else has followed the Ninth Circuit, and the Fifth Circuit and the First Circuit have specifically said this is not enough. So I'll go with that. I have one minute left. I'm going to try and reserve that for about a minute. I mean, would you want our panel to ask the Court to consider it en banc before we've made any assessment? Yes, Your Honor. And, in fact, in U.S. v. Gonzales, which just came out the other day, that's exactly what I did. I asked the Court to reconsider Williams' sua sponte en banc order, and it did go up en banc and ultimately overturned Williams, which was the misdemeanor counting of the criminal history, which I think you were on the majority panel on that case, too, Judge Golden. I'm not sure if either of you were. But the Court can recommend that the parties submit a briefing to go en banc without issuing an opinion, and obviously I would ask for that. But if the Court doesn't do that, then I'll probably be filing a petition. We can't really, as a panel, ask for that. We can ask, I think. Well, maybe we can, but we'll figure that part out. Yes. Well, what happened in Gonzales was the Court asked the parties to present briefing on whether the case should go en banc. And then ultimately what happened is we submitted a brief recommending en banc, and then DOJ ultimately submitted a brief also recommending en banc and indicating that it needed to go up. So it can do that. This Court can do that before a decision. That's if we make a sui sponte en banc. Right. Right. Thank you. Thank you, counsel. We'll hear from the government. May it please the Court. Thomas Hanlon on behalf of the United States. Let me just get you right to this point, at least it's on my mind. What's the government's position as to why shouldn't we ask the Court sui sponte to address Castaneda? Because it seems why wouldn't it be a better rule to just say when these instructions are requested they ought to be given routinely? Your Honor, the government's position is that Castaneda was not wrongly decided. In Castaneda, Castaneda reviewed the Carter decision, and Castaneda upheld or supported the position that if a defendant was wrongly  then it would be a better rule to ask the Court to address Castaneda. Do you read Castaneda to say there was no error from not giving the instruction or to say that it was error but it was harmless? The way I read Castaneda, Your Honor, is that there was no error, but if there was error, that the error would be harmless. That would be the standard to apply. And one issue that I would like to address is in regards to the timeliness of the request for the no adverse inference instruction. In the present case, pursuant to Rule 30, the district court has the authority to set a time for the parties to present jury instructions to the court. In this case, a pre-trial conference was held on August 22nd. At that time, the district court advised the parties, the government and the defendant, that if there were any instructions that they wished to submit to the court to be submitted to the jury, they were to do so by August 29th of 2006, about a week prior to trial. In this case, the defendant not only failed to present a no adverse inference instruction to the court, the defendant failed to provide any instructions to the court. So it's the government's position that, pursuant to Rule 30, that the request in this case was not timely. In the ---- Well, I was going to ask, how does the defendant know before the trial has run its course whether he's going to decide to waive his rights and get up there and testify? Well, in this case, Your Honor, looking at the supplemental excerpt of Record page 15, during the jury selection process, the defense counsel advised the jury up front prior to any testimony that they anticipated that their entire case was going to be presented through cross-examination of government witnesses. So it certainly seems in this case, based upon the comments of defense counsel to the jury, that they were well aware prior to the beginning of trial that they did not anticipate the defendant testifying or any other witnesses, for that matter, testifying. Okay. Regarding the timeliness issue as well ---- What did the judge say about timeliness? The judge in this case, when defense counsel requested the instruction, he did not request a formal instruction, rather said, I'd like some sort of instruction regarding the defendant's not testifying, being held against. And the judge then reminded defense counsel, I will not do that. I provided instructions to you that you were to submit those on a timely basis, and we're going to follow the rules in my courtroom. And the colloquy between the judge and defense counsel is cited also in the defendant's brief. The district court advised counsel ---- I don't remember reading that. No. In addition, in the brief filed by the defendant, they indicate that in both Carter  went to the jury. Therefore, it was timely. But neither Carter nor in James were we dealing with an issue where a district court had already provided instructions to counsel that they were to provide written instructions prior to trial. So this case is distinguishable from Carter, Inkins, and James in regards to the timeliness issue. So we come down to if the court finds error, is the error harmless or structural? In my brief, I cited a number of cases of different circuit courts. In Eland, in the Fifth District, Richardson v. Lucas, Fifth District, Finney v. Roethlisberg, Sixth District, Hunter v. Clark in the Seventh District, and Lewis v. Pinchak. Every court that has addressed the issue, it appears, regarding this issue of the court failing to give a no adverse inference instruction, the courts have found that it could be harmless error. It's not structural error. The government would submit in this case that for the count of conviction that the defendant possessed methamphetamine with intent to distribute, that the evidence was overwhelming. In this case, regarding this particular count, government agents conducted a search warrant at the defendant's home. The defendant was the only person found in the home. A rental receipt was found in the home with the defendant's signature showing that he paid rent for this house. He was found sleeping in a bedroom. In that same bedroom, government agents found over 100 grams of methamphetamine. The methamphetamine was 60% pure because it had already been cut with a dimethyl sulfone. In another room, agents found a smaller bag of methamphetamine that was over 90% pure because it had not been cut yet. And in the kitchen of the defendant's house, the agents found almost 300 grams of dimethyl sulfone, the cutting agent used to make a larger amount of methamphetamine for sale. In addition, the agents found two digital scales in the kitchen used to weigh methamphetamine. They found approximately $500 in cash inside of the house. Therefore, it's the government's position that based upon the evidence that was obtained during the trial from a seasoned Drug Enforcement Administration agent, that the evidence is overwhelming that the defendant possessed the drugs found in the house with intent to distribute. In addition, regarding the error, if the court were to find error, we believe that the court's instructions or admonitions at the onset of the case during jury selection where the court advised the jury panel that they were to draw no adverse presumption if the defendant chose not to testify would cure any error in this case. Throughout jury select, the jury selection process, the district court advised the jury over and over again that the defendant did not. Was the entire pool present during the, does the record show whether it was the entire pool present during that initial admonition where the court said don't make anything of it if the defendant decides not to testify because there could be all kinds of reasons that have nothing to do with whether he committed a crime. Your Honor, I don't recall. I just recall from the record that the defendant gave the jury panel the instruction or the admonition. The court, you mean? The court. You said the defendant gave the instruction. I'm sorry, the court. The district court. The jury was not sequestered. I mean, they were not being questioned one by one, though. They were not being questioned. That is apparent from the. The panel was seated, the entire panel was seated in the courtroom when the court engaged in the jury selection process, asking questions of the jurors and advising them of the defendant's constitutional rights and the burden of the government to prove its case beyond a reasonable doubt. And it also pointed out that in this case, as in Castaneda, the jury was provided with a model jury instruction regarding reasonable doubt. The jury was advised that the burden was on the government to prove its case beyond a reasonable doubt and that the burden never shifted to the defendant. In this case, the district court also advised the jury in the voir dire process, in addition to the instructions provided at the end of the case, that the defendant need not testify, the burden was on the government, and the defendant was under no obligation to produce any witnesses or to produce any evidence of any kind. Does the court have any further questions for the government? I don't believe that we do. Thank you. Thank you, Your Honor. Ms. Staub, we used up a bit of your time with questions, so we'll give you a minute to rebut.  Mr. Soto, the ability to present a constitutional right. And I would point out that last year in United States v. Bahamonde, which I believe as a judge can be decision, in that case, the court reversed a conviction when the district court refused the defendant's request to call an agent to the stand because the defendant had not given prior notice under a regulation. And the court in Bahamonde said, look, we're not going to use this regulation or this procedure to deny the defendant his constitutional due process right. And that's similar to what's being argued by the government here and was rejected by the Supreme Court in James, substance over form. We're not going to allow a procedural rule that's not used to deny these rights to bar the defendant in this case. Thank you, Your Honor. Thank you, counsel. The case just argued is submitted.
judges: Canby, Graber, Gould